IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NOREEN SALINAS, et al., | No. C 09-04410 RS |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| CITY OF SAN JOSE, et al., | |
| Defendant. | |

## I. INTRODUCTION

Steven Salinas died after an encounter with San Jose police officers in which a Taser was used against him. In this action, plaintiffs seek to hold Taser International, Inc., among others, liable for Salinas' death. Taser moves to dismiss the claims for relief sounding in express and implied warranty, arguing that it cannot be liable under such theories where Salinas was neither a purchaser nor a user of its products. Because a taser is designed for the very purpose of being used to affect persons such as Salinas, it is not dispositive that he did not *operate* the product. Nevertheless, under California precedent, the fact that Salinas cannot be said to have relied on Taser's care and judgment in designing or selecting the product for use on him is fatal to his implied warranty claim. Under the same precedent, however, his express warranty claim may go forward, despite the reliance issue. Accordingly, the motion will be granted in part and denied in part.

## II. BACKGROUND

This action originated in Santa Clara Superior Court. The complaint, pleaded on California Judicial Council forms, contains scant detail regarding the incident that allegedly led to the death of Salinas. There appears to be no dispute, however, that Salinas was tased by one or more San Jose police officers, and that he thereafter died. In addition to civil rights claims against the city and the police officers, plaintiffs have asserted claims against Taser for (1) strict products liability, (2) negligence, and (3) breach of express and implied warranty. This motion challenges only the warranty claims.[1]

## III. DISCUSSION

### A. The warranty claims

California law once provided that privity of contract was necessary in an action for breach of either express or implied warranty and that no privity existed between the original seller and a subsequent purchaser unconnected to the original sale. *Burr v. Sherwin Williams Co*. 42 Cal.2d 682, 695 (1954). As discussed below, over time exceptions to the privity requirement developed, and it appears to have been abandoned entirely in the context of express warranty claims. Thus, plaintiffs contend, under these facts and present-day California law, they should be permitted to proceed under warranty theories despite the fact that Salinas was not at purchaser of the taser at all, much less one in direct privity with the manufacturer.

California courts first recognized an exception to the privity requirement in numerous cases involving foodstuffs, and then more recently, drugs. *See Gottsdanker v. Cutter Laboratories* 182 Cal.App.2d 602, 606-607 (1960) (tracing emergence of exception in food cases, and extending it to a vaccine). Plaintiffs contend California also now recognizes an exception for *any* "dangerous instrumentality." It is not clear, however, that California courts have wholly abandoned privity concepts where "dangerous" products are involved. Rather, they may have at most recognized that

---

[1] The parties have agreed that the disposition of this motion will be binding on them in the related case, C 08-2625 RS. With this motion now decided, the Court will issue a separate order formally consolidating the two actions and setting out the procedures for subsequent filings in the matter.

2

privity should not be so narrowly construed as to bar claims by persons who effectively "stand in the shoes" of a purchaser. *See e.g., Peterson v. Lamb Rubber Company,* 54 Cal.2d 339, 346-348 (1960) (declining to accept proposition that "privity is not required where the item sold is inherently dangerous," but holding an employee to be entitled to rely on warranties made to his employer who purchased the tool in question.).

Taser's argument here goes beyond the ordinary concept of "privity" that has usually arisen in the cases either applying the rule or an exception. Taser's point is not so much that Salinas lacks the requisite contractual privity as a non-purchaser, but rather it is lacking because he did not even *use* the taser in any conventional sense of the term. It is undisputed, however, that the very purpose of a taser is to deliver an electrical charge to someone other than the person operating it, and that is exactly how it was used on Salinas. It is also apparent that the express representations Taser allegedly makes regarding its product's operation and safety, as well as any warranties implied by law, relate not only to the safety of the operator, but to the safety of persons receiving the electrical charge. Accordingly, it would be an oversimplification to conclude that no warranty claims are viable solely on the grounds that Salinas was not a "user" of the product in an ordinary sense.

The parties have not cited, nor has the Court located, any controlling authority involving tasers or similar devices. The nearest analogue appears to arise in the medical context. In *Evraets v. Intermedics Intraocular, Inc*. 29 Cal.App.4th 779 (1994), the allegedly defective product was an intraocular lens, surgically implanted into the plaintiff's eye after removal of a cataract. Although the plaintiff had consented to the surgery, the product was applied *to* the plaintiff by the doctor; a scenario somewhat similar to the taser being applied *to* Salinas by a police office.[2]

---

[2] Admittedly the *Evraets* plaintiff could be characterized as thereafter "using" the implant in a way that Salinas could not be said to have subsequently "used" the taser. That does not, however, undermine the analogy entirely, as it appears the plaintiff's injury in *Evraets* arose from the application of the product to his eye.

The trial court in *Evraets* sustained a demurrer to claims based both on express and implied warranties.³ The appellate court affirmed, as to the implied warranty claim, finding the lack of privity to be fatal. In so doing, the court observed:

> Evraets did not rely on [the defendants'] judgment that an intraocular device was appropriate for him. Rather, he relied upon his physician's skill or judgment to select or furnish a suitable product. Thus, Evraets cannot sue the manufacturers, suppliers or distributors of the lens on an implied warranty of fitness theory.

29 Cal.App.4th at 788.

Likewise here, Salinas cannot be said to have relied on Taser's judgment that its products are safe and appropriate for use by police officers. At the very most, Salinas might be said to have "relied" on the skill and judgment of the San Jose Police Department in selecting and using appropriate law enforcement tools, in the sense that all members of the public are entitled to put such trust in the police. Although the police, in turn, very well may have relied on information and safety assurances provided by Taser, that leaves Salinas in no different position than the *Evraets* plaintiff, whose doctor may likewise have relied on the representations of the manufacturer and distributor of the intraocular lens. Thus, even deeming Salinas to have "used" the taser in one sense, and even assuming he had the right to rely on the judgment of the police as much as a patient relies on a doctor's judgment, the lack of privity between him and Taser bars his claim for breach of implied warranty under California law.

Plaintiffs' claim based on *express* warranty, however, is a different matter. As the *Evraets* court noted, California case law generally has abolished the requirement of privity for express warranty claims. *Evraets*, 29 Cal.App.4th at 789 n. 4 (citing *Seely v. White Motor Co.* 63 Cal.2d 9 (1965) and *Rodrigues v. Campbell Industries*, 87 Cal.App.3d 494 (1978)). After concluding that the express warranty claim also was not preempted under federal law, the *Evarets* court held that the demurrer to that claim should have been overruled. *Evraets*, 29 Cal.App.4th at 858.

---

³ In addition to privity issues, *Evraets* had to consider whether federal regulation of medical devices preempted the state law claims. Those issues, not present here, do not affect the applicability of *Evraets'* holdings regarding privity to this case.

4

It is not entirely clear why, regardless of the existence or non-existence of any privity requirement, the issue raised by the *Evraets* court regarding the plaintiff's lack of *reliance* on any representations of the product manufacturer or distributor would not equally apply to the express warranty claim. Indeed, it appears that the earliest California decisions suggesting that privity not be required for express warranty claims did so for the very reason that an end consumer should be entitled to rely on written representations that are communicated to him or her, regardless of where in the supply chain those representations originated. *E.g. Burr v. Sherwin Williams Co.*, *supra*, 42 Cal.2d at 696 ("Another possible exception to the general rule is found in a few cases where the purchaser of a product relied on representations made by the manufacturer in labels or advertising material, and recovery from the manufacturer was allowed on the theory of express warranty without a showing of privity.").

At this juncture, it is not necessary to determine whether proof of some form of reliance is still required to recover on an express warranty claim under California law, even if strict privity is no longer a prerequisite. *Evraets* stands as clear authority that at least at the pleading stage, California law permits a claim for breach of an express warranty to go forward under circumstances sufficiently similar to these as to warrant denial of this prong of the motion to dismiss.

Finally, it is not entirely clear what significance, if any, the existence or non-existence of warranty claims in this action is likely to have. As the *Seeley* court noted, strict products liability law was developed largely for the very purpose of providing a remedy to consumers injured by defective products, because otherwise, "'[o]nly by some violent pounding and twisting,' . . . could the warranty doctrine be made to serve this purpose." 63 Cal.2d at 15 (citation omitted). Here, Taser has not moved to dismiss the strict liability or negligence claims, which would seem to provide a more natural basis for any recovery by plaintiffs in this action. It may be that this dispute at the pleading stage will have little bearing on the action other than with respect to a handful of jury instructions that will or will not be given. The Court reserves the right, of course, to determine what jury instructions are appropriate when that time comes.

B. <u>Amendment</u>

At the hearing, plaintiffs requested that if dismissal were granted, they be given leave to amend to allege with more specificity the various representations Taser apparently makes regarding its product. The proffered amendments, therefore, would appear to go only to the express warranty claim, which is not being dismissed. In any event, it is clear that the defect in the implied warranty claim as analyzed in this order is not subject to cure through amendment. Accordingly, no leave to amend will be granted.

## IV. CONCLUSION

The motion to dismiss is denied with respect to the claim for breach of express warranty, and granted with respect to the claim for breach of implied warranty, without leave to amend.

IT IS SO ORDERED.

Dated: 02/26/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

6