**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NOREEN SALINAS, et. al., | CASE NO. 5:09-cv-04410 EJD |
| Plaintiff(s), | **ORDER DENYING DEFENDANT'S MOTION TO STAY** |
| v. | |
| CITY OF SAN JOSE, et. al., | [Docket Item No(s). 86] |
| Defendant(s). | |

Presently before the court is Defendant Taser International, Inc.'s ("Taser") Motion to Stay this action during the pendency of two appeals to the Ninth Circuit in similar yet independent cases. See Docket Item No. 86. The first appeal arises from the district court's order granting summary judgment in favor of Taser in Marquez v. City of Phoenix, No. CV-08-1132-PHX-NVW, 2010 U.S. Dist. LEXIS 88545, 2010 WL 3342000 (D. Ariz. 2010) ("Marquez"). The second is taken from another order granting summary judgment to Taser in Rosa v. City of Seaside, 675 F. Supp. 2d 1006 (N.D. Cal. 2009) ("Rosa"). Plaintiffs Noreen Salinas, Carlos Salinas, Ana Liva Salinas and Loretta Salinas (collectively "Plaintiffs") have filed written opposition to Taser's abatement request. See Docket Item No. 89. The remaining Defendants - City of San Jose, Chief Robert Davis, Sergeant Jason Woodall, Officer Roderick Smith, Officer Barry Chikayasu ("Chikayasu"), and Sergeant Michael McLaren (collectively, the "City Defendants") - do not oppose the stay. See Decl. of Pamela B. Petersen ("Petersen Decl."), Docket Item No. 86, at ¶ 9.

The court has carefully reviewed the moving, opposing and reply papers and has considered

1

CASE NO. 5:09-cv-04410 EJD
ORDER DENYING DEFENDANT'S MOTION TO STAY

the parties' statements at the hearing on this motion. For the reasons explained below, Taser's Motion to Stay will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2007, officers from the San Jose Police Department ("SJPD") arrived at the scene of a reported disturbance at a motel on North First Street. Once there, they encountered Steven Salinas ("Salinas"). One of the responding officers, Chikayasu, utilized a Taser Electronic Control Device ("ECD") against Salinas. Salinas ultimately died during the incident.

Plaintiffs, each of whom are Salinas' surviving children, filed this consolidated action against Taser and the City Defendants. As to Taser, Plaintiffs allege claims for wrongful death, survival, negligence, conspiracy, and products liability. See Consolidated Compl., Docket Item No. 41, at Ex. 4. In the simplest of terms, the claims against Taser rest on a theory that Taser allegedly failed to warn that repeated applications of an ECD could cause serious injury or death, and that Taser expressly warranted that application of the ECD would not cause serious injury or death.

On December 17, 2010, Taser filed a Motion for Summary Judgment within which it argued, inter alia, that Taser expressly and repeatedly warned of the potential risks associated with multiple and continuous ECD applications. See Docket Item No. 43. Taser based this argument on the written warnings dated June 8, 2006, which it provided with the ECD utilized by Chikayasu.[1] See id. Judge Richard Seeborg denied Taser's motion, and this court denied Taser's subsequent Motion

---

[1] According to Taser's Motion for Summary Judgment, the warnings dated June 8, 2006, stated the following:

> TASER electronic control devices are weapons designed to incapacitate a person from a safe distance while reducing the likelihood of serious injuries or death. Though they have been found to be a safer and more effective alternative when used as directed to other traditional use of force tools and techniques, it is important to remember that the very nature of use of force and physical incapacitation involves a degree of risk that someone will get hurt or may even be killed due to physical exertion, unforeseen circumstances and individual susceptibilities.

Taser also cited to the "Deployment Warnings" dated June 6, 2006, which directed users to "control and restrain immediately," avoid "prolonged and continuous exposure to the TASER device's electrical discharge," and avoid "[e]xtended or repeated TASER device exposures." See Docket Item No. 43.

2
CASE NO. 5:09-cv-04410 EJD
ORDER DENYING DEFENDANT'S MOTION TO STAY

for Leave to File a Motion for Reconsideration of that order.  See Docket Item Nos. 62, 69.  The case was then set for trial to commence on September 24, 2012, with an associated pretrial conference on August 24, 2012.  See Docket Item No. 82.  Taser filed the instant motion June 12, 2012.

## II.   LEGAL STANDARD

The district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  Under this power, one case may be stayed in favor of another.  Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 863-64 (9th Cir. 1997) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.").

In order to determine whether a Landis stay should be implemented, various interests must be considered: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962) (citing Landis, 299 U.S. at 254-55).  Whether to grant a stay request is a matter entrusted to the discretion of the district court.  See Landis, 299 U.S. at 254 ("How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

When weighing the relevant interests, the court must be mindful that "if there is even a fair possibility that the stay for which he prays will work damage to some one else," the moving party "must make out a clear case of hardship or inequity in being required to go forward."  Id. at 255. Indeed, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."  Id.  Moreover, the

3
CASE NO. 5:09-cv-04410 EJD
ORDER DENYING DEFENDANT'S MOTION TO STAY

1  moving party must cite to something more than the intrinsic inconvenience arising from involvement
2  in litigation.  "[B]eing required to defend a suit, without more, does not constitute a 'clear case of
3  hardship or inequity' within the meaning of Landis."  Lockyer v. Mirant Corp., 398 F.3d 1098, 1112
4  (9th Cir. 2005).

### III.   DISCUSSION

Taser argues that a stay is appropriate pending release of the Ninth Circuit's opinions in Marquez and Rosa due to the similarities between those cases and this case.  In essence, Taser contends that a decision affirming the district court determinations in Marquez and Rosa will dispose of Plaintiffs' claims against Taser, thereby saving Taser the time and expense associated with trial preparation.

The court begins with a discussion of the two cases pivotal to this motion.  In Marquez, Ronald Marquez ("Marquez") died subsequent to an incident with Phoenix police officers, during which an officer deployed an ECD on Marquez.  Marquez, 2010 U.S. Dist. LEXIS 88545, at *13-14.  His survivors filed suit against Taser based on a products liability theory for failure to warn.  Specifically, the survivors alleged that Taser's warnings dated June 8, 2006, did not sufficiently warn of the risk of death or injury that could result from the use of ECDs under the circumstances presented at the scene of the incident.  Id. at *17.  Taser moved for summary judgment on that claim.  The district court granted Taser's motion, finding the warnings adequate as a matter of law.  Id. at *22-23.  Marquez's survivors appealed from this decision.

In Rosa, Michael Rosa ("Rosa") was subjected to multiple applications of ECDs while officers from the Seaside Police Department attempted to control and restrain Rosa.  Rosa, 675 F. Supp. 2d at 1008-1009.  Rosa died immediately after the encounter from ventricular arrythmia "due to methamphetamine intoxication" and, very likely, "the added stress and/or physiologic effects of TASER application and arrest by police."  Id. at 1009, 1010.  Within the ensuing litigation brought by Rosa's survivors, Taser moved for summary judgment on the claims for strict liability and negligence.  Id. at 1012.  In granting Taser's motion as to both claims, the court found it was neither "generally recognized" nor a "prevailing" opinion in the scientific community at the time of Rosa's death in 2004 that ECD use could result in metabolic acidosis.  Id. at 1014.  Rosa's survivors

United States District Court
For the Northern District of California

appealed from the order granting summary judgment to Taser.

As Taser points out, <u>Marquez</u> and <u>Rosa</u> are factually similar to this case in some rather obvious ways. All three cases involve the death of an individual after application of an ECD by police. The plaintiffs in each case are comprised of the decedent's survivors, and each brought tort claims against Taser based on a theory of products liability for failure to warn. Specific to <u>Marquez</u>, the warnings at issue there are the exact same warnings at issue in this case. These common elements are undisputed, and could weigh in favor of a stay if the analysis were to end there.

But as stated above, the requisite inquiry requires more than merely looking to factual overlap between cases, and the remaining relevant factors outweigh the similarities identified by Taser. To begin, the court agrees with Plaintiffs that important differences exist between this case and the two cases before the Court of Appeals. In contrast to <u>Marquez</u>, the instant Plaintiffs rely on more than just the written warnings provided to law enforcement with the ECD in order to establish Taser's liability. Here, Plaintiffs "specifically claim that TASER's warnings *and training* are inadequate to sufficiently warn law enforcement officers" that ECD application may result in death. <u>See</u> Docket Item No. 89, at 4:8-9. Both Judge Seeborg and this court have identified Plaintiffs' nuanced theory in previous orders, and it appears that this particular distinction led to the denial of Taser's summary judgment motion in this case.[2] For this reason, the court cannot accept Taser's

---

[2] In denying Taser's Motion for Summary Judgment, Judge Seeborg clarified:

> Plaintiffs' theory in this action, however, is that Taser's products are *not* as safe and free from the potential of causing or contributing to death as it would have law enforcement and the public believe. . . . [T]hey believe that Taser has created a false sense of security that leads law enforcement to resort to using its products under circumstances that do not call for *immediate* use of force at all, or at least not force that carries any substantial risk of causing death . . . . The warnings on which Taser bases this motion, however, are not directed to preventing or reducing the risks that plaintiffs contend exist. . . . [T]he overall message is that Taser devices are not responsible for such deaths, and that an officer's priority should be to exert control over subjects and place them as necessary in the care of medical professionals as quickly as possible. As such, it cannot be concluded as a matter of law that Taser adequately warns against the particular risks plaintiffs contend it products pose.

<u>See</u> Docket Item No. 62, at 12-13.

contention that Marquez is, in fact, indistinguishable from this case such that an appellate decision favorable to Taser in Marquez would be dispositive. The effect of that decision on this case is more properly the subject of another motion, even if the Ninth Circuit's decision in Marquez is precedent that this court must observe.

With regard to Rosa, the court now has the benefit of the Ninth Circuit's opinion affirming the district court's decision to grant summary judgment to Taser. There, the appellate court held that Rosa's survivors had not established, through the presentation of medical and scientific literature, a triable issue of fact that the risk of metabolic acidosis was knowable when the ECD was shipped to the Seaside Police Department in 2003 or applied to Rosa in 2004. Rosa v. TASER Int'l, Inc., No. 09-17792, 2012 U.S. App. LEXIS 14025, at *14, 2012 WL 2775006 (9th Cir. July 10, 2012). But the present case involves an ECD shipped to the San Jose Police Department *three years later* - in August, 2006. See Docket Item No. 43, at 24-25. Surely, the relevant literature has progressed in that intervening time period such that new and different studies are cited by Plaintiffs here. Thus, Rosa's application and effect on the issues before the this court is not readily apparent at this time.[3]

Furthermore, Taser has not established any "hardship or inequity" that would result in going forward outside of the time expense that may result from trial preparations. That is not enough, particularly when this case, taken together with its consolidated companion, have been pending since 2008. See Lockyer, 398 F.3d at 1112. Moreover, in light of the fact that the Ninth Circuit heard oral argument on Rosa and Marquez on the same date, it is not unreasonable to expect an opinion in Marquez in the very near future. This timing will allow Taser nearly two months to take whatever action it deems appropriate in response. For these reasons, the prejudice to Plaintiffs in postponing the trial outweighs the inconvenience to Taser at this point. This is not one of the "rare circumstances" requiring abatement. See Landis, 299 U.S. at 254.

Taser's motion to stay will therefore be denied, and the current trial dates will remain

---

[3] Building on this conclusion, telling is the fact that Taser neither presented meaningful argument analogizing Rosa to the instant case in its papers, nor did Taser articulate at oral argument the *specific* reasons why the Ninth Circuit's opinion mandates a stay despite having reviewed the appellate result.

6
CASE NO. 5:09-cv-04410 EJD
ORDER DENYING DEFENDANT'S MOTION TO STAY

undisturbed. However, as the court indicated at the hearing, this case will be assigned to another judge for trial as well as any further pretrial matters. This court must vacate all current deadlines associated with the trial in order to accommodate the reassignment, which may provide Taser some relief as a result.

### IV. ORDER

Based on the foregoing, Taser's Motion to Stay (Docket Item No. 86) is DENIED.

This case shall be reassigned to the Honorable Richard G. Kopf, who will be sitting as a visiting judge in this district, for trial and all further pretrial matters. The trial dates set by this court in the scheduling order issued October 28, 2011 (see Docket Item No. 82) shall remain as presently scheduled. However, all other pretrial deadlines, including the Final Pretrial Conference scheduled for August 24, 2012, are VACATED. The parties shall contact Judge Kopf's chambers ((402) 437-1640) to arrange for new pretrial deadlines consistent with the trial dates already set.

**IT IS SO ORDERED.**

Dated: July 13, 2012



EDWARD J. DAVILA
United States District Judge

7
CASE NO. 5:09-cv-04410 EJD
ORDER DENYING DEFENDANT'S MOTION TO STAY