IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NOREEN SALINAS, et. al., | CASE NO. 5:09-cv-04410 EJD |
| Plaintiff(s), | **ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CITY OF SAN JOSE, et. al., | |
| Defendant(s). | [ Docket Item No(s). 114] |

Presently before the court is Taser International's Inc.'s ("Taser International") Motion for Reconsideration of an order issued by Judge Richard Seeborg denying its Motion for Summary Judgment. See Docket Item No. 114. Plaintiffs Noreen Salinas, Carlos Salinas, Ana Liva Salinas and Loretta Salinas ("Plaintiffs") have filed written opposition to the motion. See Docket Item No. 119.[1]

The court has carefully reviewed the relevant pleadings. For the reasons explained below, the court has determined that the Motion for Reconsideration and the Motion for Summary Judgment, although previously denied, should now be granted.

---

[1] The other named defendants are the City of San Jose, Chief Robert Davis, Sgt. Jason Woodall, Officer Roderick Smith, Officer Barry Chikayasu, and Sgt. Michael McLaren.

# I. BACKGROUND

## A. Factual Background

The relevant factual background was previously provided by Judge Seeborg in his order addressing summary judgment:

> In the early evening of May 25, 2007, San Jose Police received a report of a disturbance involving a male and a female at the Vagabond Inn, a motel located on North First Street in San Jose. Police were advised that a woman had possibly fallen out of a window. Defendants Sgt. Jason Woodall, Sgt. Michael McLaren, Officer Barry Chikayasu, and Officer Roderick Smith responded to the scene. Sgt. McLaren arrived first, and made contact with Herbert Howard, who was standing outside the room where the disturbance had been reported, and who was later determined to be the person who had called the police. Sgt. McLaren heard yelling between a male and female from within the room, which plaintiffs characterize as a "verbal disturbance." Sgt. McLaren was unable to discern what the occupants were saying, and as plaintiffs argue, did not specifically hear any threatening statements. Conversely, defendants point out, Sgt. McLaren was not able to determine that the situation was benign. Howard reported that he had been hearing moaning and groaning from the room.
>
> Sgt. McLaren observed broken window glass on the ground, but saw no indication that anyone had fallen through the window. He knocked on the room door, identifying himself as a police officer, and demanded that the occupants open the door. There was no response, but Sgt. McLaren heard a woman trying to calm a man down, and continued groaning from the man.
>
> Officer Chikayasu arrived on the scene, and the officers discussed the fact that Sgt. McLaren had heard arguing. Sgt. McLaren, who had continued to knock on the door with no response, then slid open one of the room windows by five or six inches. Officer Chikayasu pulled the curtain aside and looked into the room, where he saw a female who he instructed to open the door. The woman, later identified as Lenore Salazar, said that everything was fine, but she opened the door. Around this time, Sgt. Woodall and Officer Smith arrived. Through the open door, the police officers saw Salinas for the first time. He was naked, but did not appear injured in any way.
>
> Officer Chikayasu and Sgt. McLaren pulled Salazar from the room. She was handcuffed and seated by the curb. Although Salazar appeared uninjured, Sgt. McLaren believed she was in potential danger from Salinas, who was still yelling, and that she might be under the influence of a drug, possibly PCP.
>
> At this point, there are two versions of what transpired. Salazar testified that when the officers entered the motel room, they instructed Salinas to turn around and place his hands behind his back, and that he immediately complied. Salinas was then handcuffed, and pulled to the

CASE NO. 5:09-cv-04410 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ground by the handcuffs. According to Salazar, at least four police officers then proceeded to beat Salinas with batons and, "kept hitting him and hitting him," despite the fact that he was not struggling. Salazar contends Salinas was tased after being handcuffed and beaten.

The police officers describe a markedly different scenario. After Salazar was removed from the room, they yelled various commands at Salinas, who was unresponsive. Because Salinas was naked, grunting, agitated, and enraged, and possibly under the influence of PCP, the officers believed it was unsafe to approach him. At the direction of Sgt. Woodall, Officer Chikayasu fired his Taser device at Salinas, in "dart" mode. The police officers then rushed him, and attempted to handcuff him. A fairly lengthy struggle ensued, and he was tased several more times. Eventually Salinas was brought under control and handcuffed. He was not tased after the officers gained control, and was never beaten with batons. The testimony of Herbert Howard, who had reported the disturbance, and that of the motel manager, who also witnessed the events, both generally corroborate the police officers' version of the incident.

After Salinas was handcuffed, paramedics entered the room. Salinas suffered cardiac arrest. CPR was unsuccessful, and he died at the scene. An autopsy concluded that Salinas, "most likely did of a lethal cardiac arrhythmia . . . due to a violent struggle . . . during PCP intoxication, in the presence of significant natural heart disease." The autopsy did not reveal any bruising that the medical examiner believed would be characteristic of baton strikes.

The Taser device used against Salinas was a TASER Model X26 ECD, purchased by and shipped to the San Jose Police Department in August of 2006. It was packaged with a Training DVD and Operating Manual, and a hard copy of Taser's then current product warnings dated June 8, 2006. The warnings in these documents repeatedly cautioned that risk of injury and death is inherent in the circumstances under which Taser devices are likely to be used, and included various suggestions for minimizing those risks, including avoiding prolonged or excessive discharges of the device against a subject. The warnings did not state that use of a Taser device could in itself cause or contribute to death, suggesting instead that the devices "have been found to be a safer and more effective alternative when used as directed [compared] to other traditional use of force tools and techniques."

See Docket Item No. 62.

### B.     Relevant Procedural History

#### 1.     The Consolidated Complaint and Subsequent Motions

On December 20, 2010, Judge Seeborg granted Plaintiffs' request for leave to file a Consolidated Complaint, which was deemed filed that same day. See Docket Item Nos. 46; 40, at Ex. C. Plaintiffs asserted nine causes of action in that pleading: (1) violation of 42 U.S.C. § 1983

3
CASE NO. 5:09-cv-04410 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

against Chikayasu, Woodall, Smith, and McLaren, (2) municipal liability against the City, (3) supervisorial liability against Davis, (4) wrongful death in violation of California Code of Civil Procedure § 377.30 against all defendants, (5) survival action in violation of § 377.30 against all defendants, (6) wrongful death based on negligence against all defendants, (7) wrongful death based on battery against the City, Chikayasu, Woodall, Smith and McLaren, (8) conspiracy against unidentified Doe defendants, and (9) product liability against Taser International.  Id.

Most relevant to this analysis are the four causes of action asserted against Taser International.  In support of their claim for wrongful death based on negligence, Plaintiffs alleged that Taser International "had a duty to Steve Salinas, the intended beneficiary and/or user of their product, the Taser, to ensure that said product worked as warranted and to ensure that the SJPD officers were properly warned and trained regarding the use of the Taser and its lethal potential."  Id. at ¶ 73.  Plaintiffs further alleged that Taser International "negligently failed to ensure that the Taser, warranted as a non-lethal weapon, does not cause death, negligently failed to warn SJPD of the Taser's potential to cause death, and negligently failed to train SJPD officers that the Taser can potentially cause death."  Id.  Plaintiff then identified Taser International's negligent actions as "the failure to properly train SJPD officers that Tasers are capable of causing death" and "the failure to market the Taser as a lethal weapon that is capable of causing death."  Id. at ¶ 74(h), (I).  The statutory violations for wrongful death and survival appear to be based on this same set of allegations inasmuch as they are asserted against Taser International.

As to the cause of action for products liability, Plaintiffs alleged that Taser International "knew that the Taser was defective, particularly in that it was unsafe for persons with epilepsy and other physical conditions, and failed to adequately warn of such danger."  Id. at ¶ 92.  Plaintiffs also alleged that Taser International "knew that the Taser was capable of causing serious injury and death, but failed to warn with respect to this risk," "knew that repeated applications of the Taser could cause serious injury and death, but failed to warn with respect to the risk," and "failed to warn of this danger and specifically marked their Taser by expressly warranting that the application of their Taser could not cause serious injury or death, when in fact they knew or should have known

4
CASE NO. 5:09-cv-04410 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

that application of the Taser could cause serious injury and the death of an individual." Id. at ¶¶ 95-97.

All defendants moved for summary judgment. See Docket Item Nos. 43, 47. Taser International based its motion as to all of Plaintiffs' claims[2] on four arguments: (1) that it expressly and repeatedly warned of the potential risks associated with multiple and continuous ECD applications, (2) that the SJPD heeded these warnings and adopted an ECD use-of-force policy generally limiting such use to no more than 5-second cycles, (3) that Chikayasu was aware of this policy such that no additional or different warnings from Taser International would have changed his conduct during his interaction with Steve Salinas, and (4) that Plaintiffs had no medical evidence to establish general or specific causation.

On the issue of failure to warn, Taser International argued that the warnings it provided to the SJPD were adequate as a matter of law, and that such a determination would be "claim dispositive." After identifying the specific warnings at issue in this case, Taser International noted that a district court in Arizona had previously found that the same warnings dated June 8, 2006, were adequate as a matter of law. That case, which is discussed more fully below, is Marquez v. City of Phoenix, No. CV-08-1132-PHX-NVW, 2010 U.S. Dist. LEXIS 88545, 2010 WL 3342000 (D. Ariz. Aug. 24, 2010). It moved for the same result in this case.

Judge Seeborg denied Taser International's Motion for Summary Judgment. See Docket Item No. 62. As to the warnings, the court stated:

> Plaintiffs' theory in this action, however, is that [Taser International's] products are *not* as safe and free from the potential of causing or contributing to death as it would have law enforcement and the public believe. . . . [T]hey believe that [Taser International] has created a false sense of security that leads law enforcement to resort to using its products under circumstances that do not call for immediate use of force at all, or at least not force that carries any substantial risk of causing death . . . . The warnings on which [Taser International] bases this motion, however, are not directed to preventing or reducing the risks that plaintiffs contend exist. . . . [T]he overall message is that Taser devices are not responsible for such deaths, and that an officer's priority should be to exert control over subjects and place them as

---

[2] Having read Taser International's motion, the court disagrees with Plaintiffs' interpretation that it did not move for summary judgment on all causes of action asserted against it.

5
CASE NO. 5:09-cv-04410 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1          necessary in the care of medical professionals as quickly as possible.
2          As such, it cannot be concluded as a matter of law that [Taser International] adequately warns against the particular risks plaintiffs contend it products pose.

3  Id.

4      For these same reasons, the court was unpersuaded by Marquez, noting that it was not

5  "entirely clear from the [district court] opinion what the Marquez plaintiffs may have been

6  contending the inadequacies of the warnings were." Id.

7      The case was transferred to the undersigned on June 6, 2011. See Docket Item No. 67.

8  Thereafter, this court denied Taser International's initial motion for leave to file a motion for

9  reconsideration of Judge Seeborg's summary judgment order and denied its subsequent motion to

10  stay this case during the pendency of two appeals to the Ninth Circuit: one from the district court's

11  order in Marquez and one from a summary judgment order issued in Rosa v. City of Seaside, 675 F.

12  Supp. 2d 1006 (N.D. Cal. 2009). See Docket Item Nos. 69, 97.

13          **2.     The Appellate Opinions in Rosa and Marquez**

14      On September 14, 2012, the court granted Taser International's second motion for leave to

15  file a motion for reconsideration since, by that time, the Ninth Circuit had filed its opinions in

16  Marquez and Rosa.

17      In Rosa, Michael Rosa ("Rosa") was subjected to multiple applications of Taser devices

18  while officers from the Seaside Police Department attempted to control and restrain him. Rosa, 675

19  F. Supp. 2d at 1008-1009. Rosa died immediately after the encounter from ventricular arrythmia

20  "due to methamphetamine intoxication" and, very likely, "the added stress and/or physiologic

21  effects of TASER application and arrest by police." Id. at 1009, 1010. His death was later linked to

22  a condition known as "metabolic acidosis, a condition under which lactic acid - a byproduct of

23  physical exertion - accumulates more quickly than the body can dispose of it, causing the pH in the

24  body to decrease." Rosa v. Taser Int'l, 684 F.3d 941, 945 (9th Cir. 2012). In ensuing litigation,

25  Rosa's survivors claimed that Taser International should have warned that repeated exposure to a

26  Taser device "carried its own risks, particularly the risk that it can cause fatal levels of metabolic

27  acidosis." Id. Taser International moved for summary judgment on the claims for strict liability and

28

6

CASE NO. 5:09-cv-04410 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

negligence based on failure to warn. Rosa, 675 F. Supp. 2d at 1012. The district court granted the motion, finding that it was neither "generally recognized" nor a "prevailing" opinion in the scientific community at the time of Rosa's death in 2004 that Taser application could result in metabolic acidosis. Id. at 1014. Rosa's survivors appealed from the order granting summary judgment.

The Ninth Circuit affirmed. Rosa, 684 F.3d at 950. Applying California law, the court recognized that the survivors' case against Taser International turned "on what was 'knowable' by a manufacturer of electronic control devices in December, 2003." Id. at 946. The court then reasoned that the four scholarly articles relied on by Rosa's survivors to demonstrate Taser International's knowledge did not create a sufficient causal link between the application of Taser devices and metabolic acidosis. Id. at 947-48. The court therefore concluded that Rosa's survivors failed to "establish a triable issue of fact that the risk of metabolic acidosis was knowable at the time of distribution" of the Taser device to the Seaside Police Department. Id. at 948.

In Marquez, Ronald Marquez ("Marquez") died subsequent to an incident with Phoenix police officers, during which an officer deployed a Taser device on Marquez multiple times in an effort to restrain him. Marquez, 2010 U.S. Dist. LEXIS 88545, at *13-14. The medical examiner concluded that Marquez died from "excited delirium," which resulted from "an overriding amount of dopamine in the brain." Id. at *14. Marquez's condition left him "at special risk for sudden death because of the cardiac effects of too much adrenaline." Id. His survivors filed suit against Taser International based on a products liability theory for failure to warn. Specifically, the survivors alleged that Taser International's warnings dated June 8, 2006, did not sufficiently warn of the risk of death or injury that could result from the use of Taser devices under the circumstances presented at the scene of the incident. Id. at *17. Taser International moved for summary judgment on that claim. The district court granted the motion, finding the warnings adequate as a matter of law. Id. at *22-23. Marquez's survivors appealed from that decision.

The Ninth Circuit affirmed the district court's finding that Taser International's warnings were adequate. Marquez v. Taser Int'l, 693 F.3d 1167, 1172-73 (9th Cir. 2012). The court found the warnings satisfied Arizona's standard that they be "'reasonably readable and apprise a consumer

7
CASE NO. 5:09-cv-04410 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

exercising reasonable care under the circumstances of the existence and seriousness of the danger sufficient to enable the consumer to protect himself against it'" because Taser International warned its products should be used with care, warned against prolonged or continuous exposure, and warned of the potential for Sudden In-Custody Death Syndrome. Id. at 1173. The court reasoned that those warnings covered "precisely" what happened to Marquez. Id.

The court also rejected the argument that Taser International should have provided a more specific warning that certain populations - such as those, like Marquez, with elevated dopamine levels - may experience an increased risk of death when exposed to a Taser device. Id. The court held that "further detail could have detracted from officer's ability to process the warning that was given." Id. Moreover, the court found Marquez's survivors had not demonstrated that a substantial number of people were affected by the alleged reaction and did not explain what additional warning language should have been provided. Id.

## II.   LEGAL STANDARD

The court has authorized reconsideration of an order denying summary judgment due to a change in law occurring subsequent to the ruling. See Civ. L.R. 7-9(b)(2). Accordingly, the court must examine the change in light of the standard which applies to motions for summary judgment.

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative

testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. DISCUSSION

Taser International argues that the Ninth Circuit's holdings in Rosa and Marquez foreclose the possibility of a triable issue on Plaintiffs' claims based on inadequate warnings because (1) Taser International has no duty to warn of unsubstantiated and speculative risks, and (2) absent such a duty, the warnings at issue in this case have been found adequate as a matter of law. These arguments are addressed below.

#### A. Unsubstantiated and Speculative Risk

Under California law, manufacturers can be held strictly liable "for injuries caused by their failure to warn of dangers that were known to the scientific community *at the time they manufactured and distributed their product*." O'Neil v. Crane Co., 53 Cal. 4th 335, 351 (2012) (emphasis added). In that regard, "[a] manufacturer is held to the knowledge and skill of an expert in the field; it is obliged to keep abreast of any scientific discoveries and is presumed to know the results of all such advances." Carlin v. Super. Ct., 13 Cal. 4th 1104, 1113 n.3 (1996). At the same time, however, liability for failure to warn is not designed to transform manufacturers into insurers for their products. See Brown v. Super. Ct., 44 Cal. 3d 1049, 1066 (1988). Thus, a manufacturer's knowledge of potential harm "based on a single isolated report of a possible link" between the

CASE NO. 5:09-cv-04410 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

product and the harm may not require a warning. Finn v. G.D. Searle & Co., 35 Cal. 3d 691, 701 (1984). Moreover, as observed by the Ninth Circuit in Rosa, "a manufacturer is *not* under a duty to warn of 'every report of a possible risk, no matter how speculative, conjectural, or tentative,' because 'inundat[ing the public] indiscriminately with notice of any and every hint of danger' would 'inevitably dilut[e] the force of any specific warnings." Rosa, 684 F.3d at 946 (quoting Finn, 35 Cal. 3d at 701) (emphasis preserved).

Here, Plaintiffs' failure to warn theory is this, as stated in the opposition to the instant motion: that the "statements made by Taser [International] in their operating manual, warnings and training with respect to any risk of serious injury or death are specifically not meant to warn that Taser[ devices] cause death." See Docket Item No. 119, at 16:12-15. But the warnings at issue here - those that were in effect as of August, 2006 - *did* account for potential death under circumstances requiring use of force or physical incapacitation which, without much doubt, encompass circumstances during which a Taser device can be deployed.[3]

Plaintiffs nonetheless claim that these warnings inadequately identify a direct connection between the application of a Taser device and the potential for death due to the pain, physical stress and psychological stress which can result. On that issue, the court faced with a question similar to that presented to the Ninth Circuit in Rosa: Plaintiffs' case against Taser International "turns on" whether it was knowable, in August, 2006, that use of its devices could result in those particular psychological mechanisms which could ultimately cause death. With regard to that question, Taser International argues that Plaintiffs do not have the medical evidence necessary to support their

---

[3] Taser International's warnings dated June 8, 2006, stated:

> Taser electronic control devices are weapons designed to incapacitate a person from a safe distance while reducing the likelihood of serious injuries or death. Though they have been found to be a safer and more effective alternative when used as directed to other traditional use of force tools and techniques, it is important to remember that the very nature of use of force and physical incapacitation involves a degree of risk that someone will get hurt *or may even be killed* due to physical exertion, unforeseen circumstances and individual susceptibilities.

See Docket Item No. 43, at Ex. C (emphasis added).

10
CASE NO. 5:09-cv-04410 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

theory.

Plaintiffs rely on the opinion of Dr. Harry Bonnell. According to the declaration submitted in opposition to Taser International's motion to exclude his testimony,[4] Dr. Bonnell bases his opinion that "it is well-accepted that pain and stress can cause cardiac arrhythmias resulting in death" on "the conclusions reached by the coroner" who examined Salinas' body, "all of the cases in the public realm in which the application of a Taser was a contributing factor in an individual's death," and "on the hundreds of articles in the public domain linking Taser ECD exposure to an increased risk of death." See Decl. of Dr. Harry Bonnell, Docket Item No. 34, at ¶¶ 9-11. At the same time, Dr. Bonnell admits that "no medical or scientific study has ever found that a TASER ECD application can directly result in cardiac arrhythmia in humans" because "there is no Institutional Review Board that would allow such testing to be done." Id. at ¶ 12.

This medical evidence suffers from critical shortcomings. Although Dr. Bonnell provides a list of items on which he bases his opinion, he provides no specifics - none of the "cases in the public realm" nor the "hundreds of articles in the public domain" are identified. That is not sufficient for Plaintiffs to overcome a motion for summary judgment. See Thornhill Publ'g Co., 594 F.2d at 738 (holding that "conclusory and speculative affidavits that fail to set forth specific facts" do not meet the burden imposed on a party resisting summary judgment).

Furthermore, Plaintiffs have not established that Dr. Bonnell's opinion or any of the cases or articles he relies upon establish that Taser International knew, in August, 2006, that there existed a potential for death due to the pain, physical stress and psychological stress which can result from application of a Taser device. Rosa requires such a showing. See Rosa, 684 F.3d at 948. Dr. Bonnell's opinion, on its own, is not enough even if it was one he held in 2006. See Finn, 35 Cal. 3d at 701. In addition, the fact that no studies exist to support Dr. Bonnell's theory leaves it unlikely that his opinion can constitute the type of "generally recognized and prevailing best scientific and medical knowledge" necessary to trigger a warning. See Chavez v. Glock, Inc., 207 Cal. App. 4th

---

[4] The court has chosen to discuss this declaration because the declaration from Dr. Bonnell submitted in opposition to Taser International's summary judgment motion provides even less information. See Docket Item No. 50.

1283, 1304 (2012).  Thus, in the absence of anything more, Plaintiffs have not shown that Taser International was under an obligation to warn about the particular risk alleged.

Accordingly, the court must conclude that Plaintiffs, like the survivors in Rosa, have failed to "present a triable issue of fact that the risk was more than purely speculative."  Rosa, 684 F.3d at 947.

### B. Warnings Adequate as a Matter of Law

The determination that Taser International was not under an obligation in August, 2006, to warn of potential death due to the physiological conditions alleged by Plaintiffs raises the issue of whether the warnings, as they were, "captured the circumstances of this case" such that the court should find them sufficient as a matter of law in a manner similar to Marquez.

"Whether the absence of a warning makes a product defective depends on several factors, among them the normal expectations of the consumer as to how a product will perform, degrees of simplicity or complication in its operation or use, the nature and magnitude of the danger to which the user is exposed, the likelihood of injury, and the feasibility and beneficial effect of including a warning."  Jackson v. Deft, Inc., 223 Cal. App. 3d 1305, 1320 (1990).  Although the adequacy of a warning is normally a question of fact, "[o]ccasionally the evidence is such that the adequacy of a warning may be decided by the court as a matter of law."  Id. at 1320.

This is one of those cases where the adequacy of a warning can be determined as a matter of law.  Like the Marquez court did when applying Arizona law, the court finds that Taser International's warnings meet the California standard as to the defects alleged.  While Plaintiffs claim that Taser International failed to warn that use of a Taser device may be unsafe for persons with certain physical conditions, it is nonetheless clear that such a warning was provided.  Indeed, the warnings dated June 8, 2006, state, in addition to the one addressing potential death, that "conditions such as excited delirium, severe exhaustion, drug intoxication or chronic drug abuse, and/or exertion from physical struggle may result in serious injury or death."  See Docket Item No. 43, at Ex. 4.  The warnings further state that "[i]n some circumstances in susceptible people, it is conceivable that the stress and exertion of extensive, repeated, prolonged, or continuous

application(s) of the Taser device may contribute to cumulative exhaustion, stress and associated medical risk(s)." Id. Moreover, entire sections of these warnings are dedicated to discussing "Sudden In-Custody Death Syndrome Awareness" and cautions officers to combine the use of a Taser device "with immediate physical restraint techniques and medical assistance" if the subject is exhibiting certain behaviors. Id.

These warnings cover the circumstances presented by this case, where Salinas "most likely died of a lethal cardiac arrhythmia due to a violent physical struggle during Phencyclidine (PCP) intoxication in the presence of significant heart disease." See Docket Item No. 52, at Ex. A. Thus, in the absence of a triable issue of fact, Taser International warnings are deemed sufficient as a matter of law.

### C. Conclusion

Having reconsidered the order denying Taser International's Motion for Summary Judgment in light of the Ninth Ciruit's rulings in Rosa and Marquez, it is now apparent that summary judgment should be granted in favor of Taser International on all causes of action asserted against it, including those based on negligence and express warranty. See Anderson v. Owens-Corning Fiberglas Corp., 53 Cal. 3d 987, 1002 (1991) (explaining that, in a a failure to warn case based on negligence "a plaintiff [must] prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about."); see also Rosa, 684 F.3d at 949. Plaintiffs' attempt to differentiate these claims from the strict liability claim is unpersuasive.

### IV. ORDER

Based on the foregoing, Taser International's Motion for Reconsideration (Docket Item No. 114) is GRANTED. The Motion for Summary Judgment (Docket Item No. 43), previously denied, is also GRANTED.

The court understands this disposition to effectively resolve the action against Taser International. As a result, the trial of this action should occupy less time than previously anticipated. Accordingly, the court intends postpone jury selection from June 17, 2013, to **June 24, 2013, at**

1  **9:00 a.m.**  The Final Pretrial Conference shall remain as scheduled for June 11, 2013, at 10:00 a.m.
2  Further discussions regarding trial scheduling will occur at that conference.
3  **IT IS SO ORDERED.**

5  Dated:  June 5, 2013

                                         EDWARD J. DAVILA
                                         United States District Judge

CASE NO. 5:09-cv-04410 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT