# EXHIBIT B

RICHARD DOYLE, City Attorney (88625)
NORA FRIMANN, Assistant City Attorney (93249)
ARDELL JOHNSON, Chief Deputy City Attorney (95340)
CLIFFORD GREENBERG, Sr. Deputy City Attorney (122612)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California 95113-1905
Telephone Number: (408) 535-1900
Facsimile Number: (408) 998-3131
E-Mail Address: cao.main@sanjoseca.gov

Attorneys for Defendants
City of San Jose and Officers

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NOREEN SALINAS, et al.,<br><br>Plaintiff(s),<br><br>v.<br><br>CITY OF SAN JOSE, ROBERT DAVIS, OFFICER BARRY CHIKAYASU, SGT. JASON WOODALL, SGT. MICHAEL MCLAREN, OFFICER RODERICK SMITH, TASER INTERNATIONAL, INC., and DOES 1-10, inclusive,<br><br>Defendant(s). | Case Number: C09-04410 EJD<br><br>JOINT PRETRIAL CONFERENCE STATEMENT<br><br>DATE: May 31, 2013<br>TIME: 11:00 a.m.<br>DEPT: 1<br>JUDGE: Hon. Edward J. Davila |

The parties submit the following Joint Pretrial Conference Statement[1].

**A. Substance of the Action.**

   **1.** Plaintiffs' Contentions:

Plaintiffs do not agree or stipulate to any of Defendants' proposed facts listed below

concerning the "substance of the action." Plaintiffs' contentions are included in Plaintiffs'

Oppositions to Defendants' Motions for Summary Judgment.

   **2.** Defendants' Contentions:

---

[1] This pretrial statement includes edits and insertions provided by Plaintiffs as of today; however, after diligent attempts to obtain Plaintiffs' counsels' authorization for filing Defendants received no response. Defendants are therefore filing the pretrial statement in accordance with the court's order.

On May 25, 2007, Steve Salinas was a 47 year old male who, according to the autopsy report, was approximately 5'9" and an estimated 275 pounds, with a body mass index ("BMI") of 38.4 kilograms per meter squared (kg/m$^2$), obese. Mr. Salinas had a history of phencyclidine ("PCP") abuse.

On May 25, 2007, Mr. Salinas ingested a lethal amount of PCP. According to Dr. Harry Bonnell, Plaintiffs' medical expert, the amount of PCP in Mr. Salinas' body at autopsy was a significant level and in the lethal range as documented in the peer-reviewed literature. According to Dr. Bonnell, PCP is a dangerous drug with no safe level; PCP causes physiologic changes to a person's body; can affect multiple organ systems (including the neurological system, the liver, and cardiac); can cause ischemia or lack of blood supply damage to the heart, can constrict small blood vessels, raises blood pressure, and forces the heart to pump harder; is cardiotoxic and can cause cardiac arrhythmias; and can potentially cause hypertension, tacharrhythmia, vasospasm, mycardial infarction, aortic dissection, pulmonary hypertension, and sudden cardiac death.

On May 25, 2007, San Jose Police Department (SJPD) police officers responded to a 911 call regarding a disturbance at the Vagabond Inn on North First Street in San Jose. Sgt. Michael McLaren arrived first and spoke with a guest of the motel, Herbert Howard. Mr. Howard reported that he had heard moaning and groaning, and crashing sounds from the room next to his. Sgt. McLaren also heard yelling between a male and female in the subject hotel room (room number 119), and saw broken glass on the ground outside the room.

Officers Chikayasu, Smith and Sgt. Woodall also arrived on scene. After knocking on the door and identifying themselves, the officers eventually convinced an occupant of the room, Lenore Salazar, to open the door. The officers pulled Ms. Salazar from the room, and through the open door, saw Mr. Salinas standing naked in the room. He did not respond to officers' commands to get down. The officers believed he was likely under the influence of PCP or some other strong drug, since he failed to respond at all and was "grunting." At the direction of Sgt. Woodall, Officer Chikayasu deployed, in probe mode, his TASER X26™ electronic control device (ECD) at Mr. Salinas' back. The ECD darts struck Mr. Salinas in his back and buttocks, and he went down to the ground. The other three officers attempted to handcuff Mr. Salinas, but he resisted and

JOINT PRETRIAL CONFERENCE STATEMENT                                        Case No. C09-04410 EJD

Case5:09-cv-04410-EJD Document 192 Filed05/17/13 Page5 of 21

struggled, preventing the officers from gaining control of his hands. Officer Chikayasu activated the ECD nine more times while the officers continued to attempt to handcuff Mr. Salinas. The ECD download report reflects 10 trigger pulls for a total ECD discharge duration of 50 seconds over a 93-second period of time, although it is unknown how many seconds of electrical charge were actually delivered to Mr. Salinas.

Mr. Ahir and Mr. Howard witnessed portions of these events and have testified generally consistently with the officers' statements. Ms. Salazar, on the other hand, claims that Mr. Salinas complied with the officers' commands was quickly handcuffed, and then was beaten repeatedly with batons.

Mr. Salinas was finally subdued and handcuffed. Shortly thereafter he appeared to lose consciousness. Paramedics attempted to revive him, but their efforts were unsuccessful. Mr. Salinas was pronounced dead at the scene.

The medical examiner identified Mr. Salinas' cause of death as "Cardiopulmonary arrest during a violent struggle in an individual under the influence of Phencyclidine (PCP)." Under "Other significant conditions," he listed "Hypertensive heart disease, coronary artery disease, obesity and [TASER ECD] use," although the examiner expressly noted the ECD use was referenced "largely for statistical and epidemiologic purposes."

Mr. Salinas's children, Noreen, Carlos, Ana Olivia and Loretta, claim damages from the officers, City of San Jose, and TASER International, Inc.

**B. Relief Sought.**

Plaintiffs seek wrongful death damages and survival damages under federal and state law. Plaintiffs also seek reasonable attorneys' fees pursuant to 42 U.S.C. §1988 and punitive damages.

Defendants pray that the plaintiffs take nothing by this action, and that defendants be awarded costs and such other relief as the Court deems just.

**C. Undisputed Facts:**

**1.** The incident occurred on May 25, 2007.

**2.** SJPD Officer Barry Chikayasu deployed his TASER X26 ECD in probe mode striking Mr. Salinas in the back with one dart in the mid-back and the other in the left buttock.

JOINT PRETRIAL CONFERENCE STATEMENT                     Case No. C09-04410 EJD

**3.** The ECD download report reflects 10 trigger pulls for a total discharge duration of 50 seconds within a 93-second period of time.

**4.** The TASER ECD used on Mr. Salinas was a TASER Model X26 ECD, Serial No. X00-208914.

**5.** This ECD was purchased by and shipped to the SJPD on August 11, 2006.

**6.** Included with the shipment of this ECD to the SJPD was a copy of the TASER Training Version 13 Training DVD, TASER X26 ECD 2005 operating manual, and law enforcement product warnings dated June 8, 2006.

**7.** SJPD received TASER's Version 13 Training DVD, 2005 operating manual, and product warnings dated June 8, 2006.

**8.** TASER International manufactured and distributed the X26 ECD involved in the incident with Mr. Salinas.

**D. Disputed Factual Issues**[2]**:**

**1.** Whether Salinas was under the influence of phencyclidine ("PCP") on May 25, 2007.

**2.** Whether, on May 25, 2007, Mr. Salinas ingested a significant level of PCP that was within the documented lethal range within the peer-reviewed literature.

**3.** Whether Salinas only had one probe still attached to him after the struggle with the SJPD officers ended.[3]

**4.** Whether the medical examiner identified Mr. Salinas' cause of death as "Cardiopulmonary arrest during a violent struggle in an individual under the influence of Phencyclidine (PCP)."

**5.** Whether under "Other significant conditions," the medical examiner listed "Hypertensive heart disease, coronary artery disease, obesity and [TASER ECD] use," although the examiner expressly noted the ECD use was referenced "largely for statistical and epidemiologic purposes."

**6.** Whether, as of May 25, 2007, any peer reviewed medical, scientific, electrical, or

---

[2] While Defendants claim that these are disputed factual issues, Plaintiffs contend that many of these are not material factual disputes that the jury needs to decide.

[3] Plaintiffs do not agree that this is a relevant material factual dispute. The location of the TASER probes after the incident are not conclusive as to the location of the TASER probes during the incident.

JOINT PRETRIAL CONFERENCE STATEMENT                    Case No. C09-04410 EJD

engineering literature existed finding or concluding that TASER ECD applications can kill a human being.[4]

**7.** Whether it is known how many seconds of electrical charge were actually delivered to Salinas.

**8.** Whether the TASER ECD download report only shows activations or trigger pulls, not delivered charge to the person.

**9.** Whether in order for an ECD to be effective in delivering an electrical charge to a person, the electricity must flow in a completed circuit.

**10.** Whether an ECD may not have a completed circuit for any number of reasons, including a miss, a broken wire, or a probe becoming dislodged during a fall, struggle or flight.

**11.** Whether Mr. Salinas was resisting.

**12.** Whether Mr. Salinas was assaultive or combative.

**13.** Whether the defendant officers' use of force was objectively unreasonable under the totality of the circumstances at the moment force was used.

**14.** Whether the City Defendants' use of force was a cause of Mr. Salinas's death.

**15.** Whether TASER expressly and repeatedly warned of the potential risk of death associated with multiple and continuous applications of a TASER X26 ECD.

**16.** Whether TASER adequately warned of the risk of death or serious bodily injury associated with the use of the X26 ECD in its Version 13 Training DVD, 2005 operating manual, and product warnings dated June 8, 2006.

**17.** Whether the San Jose Police Department heeded TASER's warnings and adopted an ECD use-of-force policy consistent with those warnings.

**18.** Whether SJPD Bulletin No. 004-05 was in effect on May 25, 2007.

**19.** Whether additional or different warnings from TASER would have changed the officers' conduct under the circumstances presented by Mr. Salinas on May 25, 2007.

**20.** Whether the lack of any warning was a substantial factor in causing Mr. Salinas' death.

---

[4] Plaintiffs do not agree that this is a disputed factual issue to be tried in this case.

JOINT PRETRIAL CONFERENCE STATEMENT                    Case No. C09-04410 EJD

**21.** Whether the conduct of the officers was a cause of death.

**22.** Whether TASER adequately warned that the TASER ECD itself can cause death.

**23.** Whether the Officers' committed a battery on Mr. Salinas.

**24.** Whether the Officers' were negligent in handling the situation with Mr. Salinas.

Defendant TASER also lists the additional factual issues in dispute below; however Plaintiffs do not agree that these proposed contentions properly frame the factual issues in dispute:

**25.** Whether there is general causation evidence that an ECD exposure is capable of causing sufficient pain and stress to cause death when one probe is deployed in the buttock and the other probe is deployed in the mid-back.

**26.** Whether there is evidence of specific causation that the TASER's ECD was a substantial factor in causing Mr. Salinas' death.

**E. Disputed Legal Issues:**

**1**. <u>Plaintiffs' Contentions</u>.

While there may be a dispute as to the standard for wrongful death damages arising out of a constitutional violation, Plaintiffs contend that the standard for excessive force under the Fourth Amendment is clearly defined by the case law of this Circuit and the U.S. Supreme Court. Plaintiffs further contend that qualified immunity does not apply to the facts of this case and that damages for a constitutional violation (survival and wrongful death damages) is a matter to be decided by the jury.

**2**. <u>Defendants' Contentions</u>.

**a.** Whether TASER had a duty to warn that the pain and stress of repeated TASER ECD applications could cause secondary changes in blood chemistry sufficient to contribute to cardiac arrest and death in the absence of evidence of general acceptance in the medical community. *Rosa v. Taser Int'l, Inc.*, 684 F.3d 941, 946-47 (9th Cir. 2012)(holding that unproven causation theories do not constitute generally accepted medical knowledge and affirming summary judgment for TASER).

**b.** Whether TASER adequately warned of the risk of death or serious bodily injury associated with multiple applications of a TASER X26 ECD. *Marquez v. City of Phoenix*, 693 F.3d

6

1167 (9th Cir. 2012)(finding TASER's June 8, 2006 warnings adequate as a matter of law regarding risks of death associated with multiple ECD exposures in stressful situations).

    **c.** What the proper standard for liability is under the Fourth Amendment.

    **d.** What the proper standard for liability is under the Fourteenth Amendment.

    **e.** Whether the officers are entitled to qualified immunity.

    **f.** What the proper measure of damages is under the Fourth Amendment.

**F. Trial Stipulations**

    **1.** The officers were acting in the course and scope of their employment during the incident.

    **2.** The officers were acting under color of law during the incident.

    **3.** The use of the TASER ECD on the decedent by the officers is a seizure for purposes of the Fourth Amendment.

    **4.** The parties agree to exclude any evidence or reference at trial to: Defendants' liability insurance; the number of attorneys, or the size, number or locations of the law firms representing any party; and any "Golden Rule" arguments, including any argument that the jury should "place itself in the position of [officer or City of San Jose or TASER or Plaintiff]".

**G. Witnesses:**

    The following witnesses are likely to be called at trial, other than solely for impeachment or rebuttal:

    **1.** <u>Plaintiffs</u>. In addition to Defendants' witnesses listed below , Plaintiffs intend to call:

    **a.** Plaintiffs

    **b.** Medical Examiner, Joseph O' Hara

    **c.** Plaintiffs' expert Roger Clark

    **d.** Plaintiffs' expert Harry Bonnel

    **e.** Sgt. Michael McLaren

    **f.** Officer Barry Chikayasu

    **g.** Sgt. Jason Woodall

    **h.** Officer Roderick Smith

    **i.** Lt. Jeremy Bowers

7

**j.** Investigating Officers

**k.** Paramedic Poblete

**l.** Leonore Salazar

**2.** Defendants.

**a.** Sgt. Michael McLaren – involved officer

**b.** Officer Barry Chikayasu – involved officer

**c.** Sgt. Jason Woodall – involved officer

**d.** Officer Roderick Smith – involved officer

**e.** Sgt. Stephen Donohue – Observed Salinas in Mongol vest, associating with other members of Mongol gang.

**f.** Lt. Jeremy Bowers – policies and procedures regarding use of TASER ECDs in SJPD.

**g.** Dinesh Ahir – Manager of Vagabond Inn; witness to events

**h.** Herbert Howard – guest at Vagabond Inn; witness to events

**i.** Dr. Joseph O'Hara – Coroner; Cause of death

**j.** Paramedic Poblete- SJFD

**k.** Guadalupe Mejia – front desk clerk at Vagabond Inn; called 911

**l.** Officer A. Little – arrived on scene at very end of struggle and dealt with Lenore Salazar

**m.** Officer Granberg and/or Lagergren – Homicide Crime Scene Unit officers; may testify about scene details and what was found in the room

**n.** Officer Sumner – Observed Steve Salinas during incident and arrest of April 27, 2007

**o.** Officer J. Stewart – Encountered Steve Salinas after incident of May 23, 2007, in which Salinas, under the influence, drove his car into a tree and accelerated until the car caught on fire

**p.** Officer Corbin - Encountered Steve Salinas after incident of May 23, 2007, in which Salinas, under the influence, drove his car into a tree and accelerated until the car caught on fire

**q.** Russell Sparman – Observed Steve Salinas drive into tree on May 23, 2007.

**r.** Sgt. Michael Brown – Homicide investigator; interviewed witnesses to incident and dealt with family members regarding Salinas's Mongol vest

**s.** Officer D. Anaya – interviewed witnesses and dealt with family members regarding

8

Salinas's Mongol vest

      **t.** Greg Meyer – Expert witness regarding police practices and procedures.

      **u.** Officer Robert Lopez – policies and procedures regarding training program for TASER ECDs at the SJPD

      **v.** Former Lt. Ed Flossi – policies and procedures regarding use of TASER ECDs

      **w.** Richard Guilbault – TASER's Vice President of Training & Education

      **x.** Rick Smith – TASER's CEO and founder

      **y.** John Peters – Expert witness regarding TASER's product warnings

      **z.** Dr. Jeffery Ho – Expert witness regarding TASER product testing and medical studies

      **aa.** Dr. Michael Evans – Expert witness regarding toxicology

      **bb.** Dr. Michael Graham – Expert witness regarding forensic pathology

      **cc.** Plaintiff Noreen Salinas

      **dd.** Plaintiff Carlos Salinas

      **ee.** Plaintiff Ana Liva Salinas

      **ff.** Plaintiff Loretta Salinas

      **gg.** Person to lay foundation for drug test results of Lenore Salazar, if necessary

**H. Exhibits:**

    **1.** <u>Plaintiffs</u>.

      **a.** Audio interview of Officer Chikayasu

      **b.** Transcription of audio interview of Officer Chikayasu

      **c.** Audio interview of Sgt. Jason Woodall

      **d.** Transcription of audio interview of Sgt Jason Woodall

      **e.** Audio interview of Sgt. Det. Mike Brown

      **f.** Transcription of audio interview of Sgt. Det. Mike Brown

      **g.** Audio interview of Officer Roderick Smith

      **h.** Transcription of audio interview of Officer Roderick Smith

      **i.** Audio interview of Officer Sergeant Michael McLaren

      **j.** Transcription of audio interview of Sergeant Michael McLaren

9

**k.** Taser download

**l.** Autopsy report

**m.** Autopsy Diagrams

**n.** Autopsy photos

**o.** Photos of decedent

**p.** Reports of Officers Chikayasu, Sgt. Woodall, Sgt. McLaren, Officer Smith

**q.** Photos of decedent with family

**r.** Funeral and burial expenses

**s.** POST Learning Domain 20

**t.** Taser warnings related to the X26 from 2005 to present

**u.** San Jose Police Department policy and procedures re use of taser

**v.** San Jose Police Department policy and procedures re use of force

**w.** Diagrams authored by involved officers during deposition

**x.** Article: Acquired Long QT Syndrome From Stress Cardiomiopathy is Associated With Ventricular Arrhythmias and Torsades de Pointes[5]

**y.** Article: Atrial Fibrillation After Taser Exposure in a Previously Healthy Adolescent

**z.** Article: Nanthakumar K, Billingsley I, Masse S, et al. Cardiac Electrophysiological Consequences of Neuromuscular Incapacitating Device Discharges. *J Am Coll Cardiol.* Aug 15 2006;48(4):798-804.

**aa.** Article: Effect of a TASER Shot to the Chest of a Patient With an Implantable Defibrillator

**bb.** Article: Pasquier M, Carron PN, Vallotton L, Yersin B. Electronic Control Device Exposure: A Review of Morbidity and Mortality. Ann Emerg Med.May 2011.

**cc.** Article: Funding Source and Author Affiliation

**dd.** Article: Successful Resuscitation of a Patient in Asystole After a TASER Injury

---

[5] Plaintiffs' list 6 articles in their exhibit list without a citation identifying the author, publication source or date that enables Defendants to determine what exactly the are referring to and without providing a copy of the actual articles to Defendants despite several requests to do so before the filing of this joint pretrial statement. Defendants therefore object to the identification of these 6 "articles".

JOINT PRETRIAL CONFERENCE STATEMENT                    Case No. C09-04410 EJD

**ee.** Article: Cao M, Shinbane JS, Gillberg JM, Saxon LA. Taser-Induced Rapid Ventricular Myocardial Capture Demonstrated by Pacemaker Intracardiac Electrograms. *J Cardiovasc Electrophysiol*. Aug 2007;18(8):876-9.

**ff.** Article: Soleimanirahbar A, Lee B. The TASER Safety Controversy. Expert Rev. Med. Devices 8(6), 661–663 (2011).

**gg.** Article: Holder Jr. EH, Robinson LO, Laub JH. Study of Deaths Following Electro Muscular Disruption. NIJ. 2011.

**hh.** Article: Kim P, Franklin W. Ventricular Fibrillation after Stun-Gun Discharge. N Engl J Med. Sep 1 2005;353(9):958-959.

**ii.** Article: Zipes – Sudden Cardiac Arrest and Death Associated With Application of Shocks From a TASER ECD

**2.** <u>Defendants</u>. Documents to be offered in evidence, other than solely for impeachment or rebuttal:

**a.** Diagram(s)/photographs of motel and room

**b.** Tapes of 911 calls

**c.** Tape of radio communications

**d.** Tapes of video surveillance of motel

**e.** Photographs of Steven Salinas in Mongol vest

**f.** Photographs of items found in hotel room

**g.** SJPD Policy documents re: force/TASER ECDs

    **i.** Revised Use of Force Policy Memo July 12, 2000

    **ii.** Issuance of X-26 Taser Memo April 15, 2004

    **iii.** Use of Force and Taser Policy Duty Manual Revision June 16, 2004

    **iv.** Taser Usage Study May 2005

    **v.** Training Bulletins Memo August 18, 2005

    **vi.** Taser Training Updates Bulletin Sept. 19, 2005

    **vii.** Taser Usage Update Bulletin Dec. 1, 2005

    **viii.** 12/1/05 San Jose Police Department TASER Policy

11

  **ix.** SJPD Electronic Weapons User Course Nov. 2005

  **x.** Duty Manual Revision Memo re Downloads June 19, 2006

  **xi.** San Jose Police Department Training Bulletin No. 004-05 re TASER Usage Update

  **xii.** 2009 San Jose Police Department Duty Manual

**h.** SJPD Training documents re: TASER ECDs

**i.** 2006 Version 13 Training DVD

**j.** Version 13 Instructor Certification Lesson Plan

**k.** Version 13 Instructor Course Power Point Presentation with notes

**l.** Version 13 User Course Power Point Presentation with notes

**m.** Version 13 User Course Power Point Presentation, slide #32

**n.** Version 13 User Course Power Point Presentation, slide #131

**o.** Version 13 User Course Power Point Presentation, slide #134

**p.** Version 13 User Course Power Point Presentation, slide #166

**q.** Version 13 User Course Power Point Presentation, slide #169

**r.** Version 13 User Course Power Point Presentation, slide #172

**s.** Version 13 User Course Power Point Presentation, slide #173

**t.** Version 13 User Course Power Point Presentation, slide #174

**u.** Version 13 User Course Power Point Presentation, slide #175

**v.** Version 13 User Course Power Point Presentation, slide #176

**w.** Version 13 User Course Power Point Presentation, slide #177

**x.** Version 13 User Course Power Point Presentation, slide #178

**y.** Version 13 User Course Power Point Presentation, slide #179

**z.** 2005 TASER X26 Operating Manual

**aa.** 3/1/07 TASER M26, X26 Law Enforcement Warnings

**bb.** 6/8/06 TASER M26, X26 Law Enforcement Warnings

**cc.** X26, Serial # X00-208914 Data Download

**dd.** 8/1/07 TASER Packaging Slip returning X00-208914 to San Jose PD

12

**ee.** TASER RMA Receipt and paperwork re X00-208914

**ff.** TASER's Communications report for San Jose Police Department

**gg.** 5/25/07 San Jose Police Department Report #07-145-1024

**hh.** San Jose Police Department Report #07-154-0644

**ii.** Police Reports of Prior Incidents Involving Steve Salinas (06-127-0850, 07-116-1027, 07-143-1406)

**jj.** Event Chronology for 5/25/07

**kk.** Records from Vagabond Inn

**ll.** Vagabond Inn Registration for Steve Salinas 5/25/07

**mm.** 5/25/07 Interview Sheet of Dinesh Ahir

**nn.** 5/25/07 Interview Sheet of Herbert Hoover Howard, Jr.

**oo.** 2nd interview sheet of Herbert Hoover Howard, Jr.

**pp.** San Jose Technical Evidence Log and Documentary Evidence

**qq.** Audio interview with Officer Chikayasu

**rr.** 5/25/07 Audio interview with Sgt. Jason Woodall

**ss.** 5/25/07 Audio interview with Lenore Salazar

**tt.** 5/26/07 Audio interview with Sgt. Det. Mike Brown

**uu.** 5/26/07 Audio interview with Off. Robert Smith

**vv.** 5/26/07 Audio interview with Off. Dave Anaya

**ww.** 5/31/07 Interview with Carlos Salinas

**xx.** 5/31/07 2nd Interview with Carlos Salinas

**yy.** San Jose Fire Department records (DOI 5/24/07)

**zz.** San Jose PD records re Lenore Salazar re PCP influence (DOI 5/25/07)

**aaa.** San Jose PD Crime Lab records

**bbb.** San Jose PD Investigator Notebooks re incident

**ccc.** Det. Michael Brown's Statement to the CA DA office re incident on 5/25/07 involving Steve Salinas

**ddd.** 12/14/10 Declaration of Jeff Rickel, San Jose Police Department

13

**eee.** Santa Clara County Autopsy Report for Steven Salinas

**fff.** Santa Clara County Neuropathology Report for Steven Salinas

**ggg.** 6/27/07 NMS Labs- Toxicology Report for Steven Salinas

**hhh.** AMR Records (DOI 5/25/07)

**iii.** San Jose Fire Department records (DOI 5/25/07)

**jjj.** Regional Medical Center of San Jose (DOI 5/24/07)

**kkk.** Alexian Brothers Hospital (DOI 5/22/98)

**lll.** AMR Records (DOI 4/26/07)

**mmm.** San Jose Fire Department records (DOI 4/26/07)

**nnn.** Santa Clara Valley Medical Records

**ooo.** Medical records of Steve Salinas

**ppp.** Work records of Steve Salinas

**qqq.** 09/27/10 Declaration of Patrick W. Smith, TASER International

**rrr.** Bell, L. On a form of disease resembling some advanced stages of mania and fever, but so contradistinguished from any ordinary observed or described combination of symptoms as to render it probable that it may be overlooked and hitherto unrecorded malady. *American Journal of Insanity*, 1849;6:97-127.

**sss.** Spirito P and BJ Maron. Relation between extent of left ventricular hypertrophy and occurrence of sudden cardiac death in hypertrophic cardiomyopathy. *J Am Coll Cardiol*, 1990;15:1521-1526.

**ttt.** Maron BJ. Hypertrophic cardiomyopathy: a systematic review. *JAMA*, 2002;287:1308-1320.

**uuu.** Pestaner JP and PE Southall. Sudden death during arrest and phencyclidine intoxication. *Am J Forensic Med Pathol*, 2003;24:119-122.

**vvv.** Mehta D, Curwin J, Gomes A and V Fuster. Sudden death in coronary artery disease. *Circulation*, 1997;96:3215-3223.

**www.** Mitka M. Some men who take Viagra die – why? *JAMA*, 2000;283:590-593.

**xxx.** Di Maio TG and VJM Di Maio. Excited delirium syndrome cause of death and prevention. 1st ed. Boca Raton, Florida: Taylor & Francis Group, 2006.

**yyy.** Rudolph RD. The post hoc ergo propter hoc fallacy in medicine. *Can Med Assoc J*, 1938;38:281-284.

JOINT PRETRIAL CONFERENCE STATEMENT                    Case No. C09-04410 EJD

**zzz.** Farnham FR and HG Kennedy. Acute excited states and sudden death: much journalism, little evidence. *Br Med J*, 1997;315:1107-8.

**aaaa.** 2005 American Heart Association Guidelines for Cardiopulmonary Resuscitation and Emergency Cardiovascular Care: Part 5: Electrical Therapies: Automated External Defibrillators, Defibrillation, Cardioversion, and Pacing.

**bbbb.** Carleton SC. Cardiac problems associated with electrical injury. *Cardiol Clin*, 1995;13:263-266.

**cccc.** Hick JL, SW Smith and MT Lynch. Metabolic acidosis in restraint-associated cardiac arrest: a case series. *Acad Emerg Med*, 1999;6:239-43.

**dddd.** Ho JD, et al. Cardiovascular and physiologic effects of conducted electrical weapon discharge in resting adults. *Acad Emerg Med*, 2006;13:589-595.

**eeee.** Ho JD, Dawes DM, Bultman LL, et al. Respiratory Effect of Prolonged Electrical Weapon Application on Human Volunteers. *Acad Emerg Med*, 2007;14:197-201.

**ffff.** Ho J, Lapine A, Joing S, Reardon R and D Dawes. Confirmation of respiration during trapezial conducted weapon application. *Acad Emerg Med*, 2008;15:398.

**gggg.** Moscati R, Ho JD, Dawes DM and JR Miner. Physiologic effects of prolonged conducted electrical weapon discharge in ethanol-intoxicated adults. *Am J Emerg Med*, Article in Press, 2009: doi:10.1016/j.ajem.2009.02.010.

**hhhh.** Dawes DM, Ho JD, Johnson MA, Lundin E, Janchar TA and JR Miner. 15-second conducted electrical weapon exposure does not cause core temperature elevation in non-environmentally stressed resting adults. *Forensic Sci Int*, 2008;176:253-257.

**iiii.** Ho JD, Dawes DM, Cole JB, Hottinger JC, Overton KG and JR Miner. Lactate and pH evaluation in exhausted humans with prolonged TASER X26 exposure or continued exertion. *Forensic Sci Int*, 2009;190:80-86.

**jjjj.** Ho JD, Dawes DM, Bultman LL, Moscati RM, Janchar TA and JR Miner. Prolonged TASER use on exhausted humans does not worsen markers of acidosis. *Am J Emerg Med*, 2009;27:413-418.

**kkkk.** Ho JD, Dawes DM, Heegaard WG, Calkins HG, Moscati RM and JR Miner. Absence of electrocardiographic change after prolonged application of a conducted electrical weapon in physically exhausted adults. *J Emerg Med*, Article in Press, 2009: doi:10.1016/j.jemermed.2009.03.023.

**llll.** Dawes DM, Ho JD, Reardon RF, Sweeney JD and JR Miner. The physiologic effects of multiple simultaneous electronic control device discharges. *West J Emerg Med*, 2010;XI:49-56.

**mmmm.** Dawes DM, Ho JD, Reardon, RF and JR Miner. Echocardiographic evaluation of TASER X26 probe deployment into the chests of human volunteers. *Am J Emerg Med*, 2010;28:49-55.

**nnnn.** Vilke G, Sloane C, Bouton K, et al. Cardiovascular and metabolic effects of the

JOINT PRETRIAL CONFERENCE STATEMENT                    Case No. C09-04410 EJD

TASER on human subjects. *Acad Emerg Med*, 2007;14(supplement 1):S104-S105.

oooo.   Ho JD, Dawes DM, Reardon RF, et al. Echocardiographic evaluation of a TASER X26 application in the ideal human cardiac axis. *Acad Emerg Med*, 2008;15:838-844.

pppp.   Levine SD, Sloane CM, Chan TC, et al. Cardiac monitoring of human subjects exposed to the TASER. *Am J Emerg Med*, 2007;33:113-117.

qqqq.   Jauchem JR, Sherry CJ, Fines DA and MC Cook. Acidosis, lactate, electrolytes, muscle enzymes, and other factors in the blood of Sus scrofa following repeated TASER exposures. *Forensic Sci Int*, 2006;161:20-30.

rrrr.   Wu JY, Sun H, O'Rourke AP, et al. TASER dart-to-heart distance that causes ventricular fibrillation in pigs. Accessed November 30, 2007 at: http://www.engr.wisc.edu/bme/faculty/webster_jhon/EB2006Final.pdf.

ssss.   Jauchem J. Re: Acidosis, lactate, electrolytes, muscle enzymes, and other factors in the blood of Sus scrofa following repeated TASER exposures [reply to letter to the editor]. *Forensic Sci Int*, 2007.

tttt.   Ho JD, Dawes DM, Nelson RS, Lundin EJ, Ryan FJ, Overton KG, Zeiders AJ and JR Miner. Human acidosis and catecholamine evaluation following simulated law enforcement "use of force" encounters. *Acad Emerg Med*, 2010, In Press.

uuuu.   Dawes D, Ho J and J Miner. The neuroendocrine effects of the TASER X26: a brief report. *Forensic Sci Int*, 2009;183:14-19.

vvvv.   Phencyclidine: An Update (National Institute on Drug Abuse Research Monograph Series). DH Clouet (ed.), Dept. of Health and Human Services, United States Public Health Service, 1986. Accessed on May 10, 2010 at: http://archives.drugabuse.gov/pdf/monographs/64.pdf.

wwww.   Ho JD, Heegaard WG, Dawes DM, Natarajan S, Reardon RF and JR Miner. Unexpected Arrest-Related Deaths in America: 12 Months of Open Source Surveillance. *West J Emerg Med*, 2009;X:68-73.

xxxx.   Stratton SJ, Rogers C, Brickett K, and G Gruzinski. Factors associated with sudden death of individuals requiring restraint for excited delirium. *Am J Emerg Med*, 2001;21:187-191.

yyyy.   Forensic Science and Medicine: Sudden Deaths in Custody. DL Ross and TC Chan (eds.), Totowa, New Jersey, Humana Press, 2006.

zzzz.   McCarron MM, Schulze BW, Thompson GA, et al: Acute phencyclidine intoxication: Incidence of clinical findings in 1,000 cases. Ann Emerg Med 10:237, 1981.

aaaaa.   McCarron MM, Schulze BW, Thompson GA, et al: Acute phencyclidine intoxication: Clinical patterns, complications, and treatment. Ann Emerg Med 10:290, 1981.

bbbbb.   Eastman JW, Cohen SN: Hypertensive crisis and death associated with phencyclidine poisoning. JAMA 231:1270, 1975.

ccccc.   Chan T, Sloane C, Neuman T, et al. The Impact of the TASER Weapon on

16

Respiratory And Ventilatory Function in Human Subjects? *Acad Emerg Med* 2007; Volume 14, 5 Supplement 1 191-192.

    **ddddd.** Dawes, D., Ho, J., et al. 15-second conducted electrical weapon application does not impair basic respiratory parameters, venous blood gases, or blood chemistries and does not increase core body temperatures. *Ann Emerg Med*, 2007; 50 (3): S132.

    **eeeee.** Jauchem JR, Cook MC, Beason CW. Blood factors of Sus scrofa following a series of three TASER ® electronic control device exposures. *Forensic Sci Int*. Jul 12 2007.

    **fffff.** Bozeman, W.P., Hauda, W.E., Heck, J.J., Graham, D.D., Martin B.P., Winslow, J.E. 2009. Safety and Injury Profile of Conducted Electrical Weapons Used by Law Enforcement Officers Against Criminal Suspects. Annals of Emergency Medicine. Volume 53, Issue 4, Pages 480-489, April 2009.

    **ggggg.** Haileyesus T, Annest JL, Mercy JA, Non-fatal conductive energy device-related injuries treated in US emergency departments, 2005–2008, Injury Prevention (2010). doi:10.1136/ip.2010.028704.

    **hhhhh.** Eastman, A.L., et al., Conductive electrical devices: a prospective, population-based study of the medical safety of law enforcement use, J Trauma, 2008, 64(6): p. 1567–72.

    **iiiii.** Five (5) year NIJ study: Laub, J., Study of Deaths Following Electro Muscular Disruption, National Institute of Justice, May 2011.

    **jjjjj.** Report 6 of the Council on Science and Public Health (A-09), Use of Tasers[®] [Conducted Electrical Devices (CEDs)] by Law Enforcement Agencies (Reference Committee D)

    **kkkkk.** Strote J, Walsh M, Angelidis M, Basta A, Hutson HR., Conducted electrical weapon use by law enforcement: an evaluation of safety and injury, J Trauma. May 2010; 68(5):1239–1246.

    **lllll.** John M. MacDonald, Robert J. Kaminski, and Michael R. Smith, The Effect of Less-Lethal Weapons on Injuries in Police Use-of-Force Events, American Journal of Public Health, October 2009.

    **mmmmm.** (02/2009 Fish/Kroll) Electrical Injuries: Medical and Bioengineering Aspects, Second Edition, Edited by Raymond M. Fish and Leslie A. Geddes, Lawyers & Judges Publishing Company, Inc. Chapter 42: TASER Electronic Control Devices.

    **nnnnn.** Phencyclidine. Tintinalli's Emergency Medicine: A Comprehensive Study Guide, 6th Edition (2004).

    **ooooo.** Clary D.O., Cravey R.H., MacDonald B.J., Wiersema D.S., Pearce D.S. and Ragle J.L., The Phencyclidine-Intoxicated Driver, J of Analytical Toxicology, Nov/Dec 1979.

    **ppppp.** Bailey, Shaw and Guba, Phencyclidine Abuse: Plasma Levels and Clinical Findings in Casual Users and in Phencyclidine-Related Deaths, J of Analytical Toxicology, Nov/Dec 1978.

    **qqqqq.** Articles and references relied upon and identified in the Expert Report of Dr.

17

Michael Evans, including Wall et al, 1981; 2003 Drug Abuse Warning Network (DAWN); 2003 US Poison Control Centers; Pestaner, J.P. & Southhall, P.E., 2003; and Baselt, 2004.

**rrrrr.** Declaration of Rick Smith (01/13/11)

**sssss.** Declaration of Dr. Jeffery Ho (01/13/11)

**ttttt.** Expert Report of Dr. Jeffery Ho

**uuuuu.** Expert Report of Rick Smith

**vvvvv.** Expert Report of Rick Guilbault

**wwwww.** Expert Report of John Peters

**xxxxx.** Expert Report of Dr. Michael Evans

**yyyyy.** Expert Report of Michael Graham

**zzzzz.** Deposition of Joseph O'Hara, M.D.

**aaaaaa.** Plaintiffs' discovery responses

**bbbbbb.** Plaintiffs' Complaints

**3.** <u>Defendant City of San Jose and Officers</u>. In addition to the above exhibits listed by all Defendants, the Defendant City of San Jose and Officers list the following documents to be offered in evidence, other than solely for impeachment or rebuttal:

**a.** TASER Preferred Target Zone Bulletin Oct. 28 2009

**b.** TASER Bulletin 14.0-03 April 28, 2008

**c.** TASER Bulletin 15.0 Sep. 30, 2009

**I. Further Discovery or Motions:**

TASER's Motion for Reconsideration filed on September 27, 2012 [Dkt. 114] is fully briefed and pending before the Court.

The following Motions in Limine are also expected to be filed by the parties:

**1.** TASER's Motion in limine to exclude news media reports, public interest reports, and other miscellaneous hearsay documents.

**2.** TASER's Motion in limine to exclude evidence of other TASER litigation or other ECD-related incidents.

**3.** TASER's Motion in limine to exclude any post-distribution (August 2006) TASER product warnings or training materials.

18

**4.** TASER's Motion in limine to exclude any argument or evidence that Plaintiffs filed this lawsuit to protect or vindicate the rights of others rather than to obtain a monetary judgment.

**5.** TASER's Motion in limine to exclude any evidence and testimony that was not properly and timely disclosed or that lacks relevance.

**6.** Plaintiffs' motion in limine to exclude decedent's criminal history and prior contacts with law enforcement.

**7.** Plaintiffs' motion in limine to exclude decedent's auto accident six weeks prior to the incident or any other accidents.

**8.** Plaintiffs' motion in limine to exclude any reference to the decedent's vest or jacket and any alleged association with a mongol gang.

**9.** Plaintiffs' motion in limine to exclude any reference to the decedent's drug use or prior drug use.

**10.** Plaintiffs' motion in limine to exclude articles alleging that tasers cannot cause death.

**11.** Plaintiffs' motion in limine to exclude Noreen Salinas' pending personal injury case.

**12.** Plaintiffs' motion in limine to exclude tattoos.

**13.** Plaintiffs' motion in limine to exclude reference to any findings of the District Attorneys' Office or review board regarding this incident.

**14.** Plaintiffs' motion to exclude information not known to the officers at the time of the use of force, including but not limited to all tape recordings, video surveillance, the decedent's prior contacts with law enforcement, and items found in the hotel room after the fact.

**J.  Disputed Evidentiary Issues:**

The parties reserve their right to object to exhibits and testimony offered during the trial.

**K.  Trial Estimate:**

Plaintiffs estimate that the trial will take 8-10 days.  Defendants contend that a minimum of 12-15 court days will be needed to complete the trial of this matter in light of the complicated technical issues raised by Plaintiffs' products liability claims against TASER and in light of the fact that Plaintiffs also bring a civil rights case against the City Defendants.

The Court has set a trial schedule for this matter. [Dkt. 112]

JOINT PRETRIAL CONFERENCE STATEMENT                                    Case No. C09-04410 EJD

The amount of any punitive damages to be assessed is bifurcated, to be tried only upon the return of a verdict by the jury that Plaintiffs are entitled to such an award. [Dkt 64]

## L.  Other Matters:

The Court has made the following rulings:

- Excluding Plaintiffs' expert Roger Clark from testifying at trial that: (1) ECDs can cause death or that the use of an ECD against Salinas caused or contributed to his death; (2) from characterizing the contents of the coroner's report as including any conclusion that ECDs can cause death or that the use of an ECD against Salinas caused or contributed to his death; (3) as to the physiological effects of the application of an ECD, either as a matter of medical expertise or through observational experience as a law enforcement officer; (4) ECDs are "extreme," "cruel," "dangerous," "excessively painful," or "potentially lethal"; or (5) Salinas received an electrical charge during the full 50 seconds that the evidence indicates the ECD was activated. [Dkt. 39]

- Permitting Plaintiffs' expert Roger Clark to testify as to: (1) when use of an ECD is justified; (2) offering an opinion that the use of an ECD was not justified under the facts of this case; (3) Clark's experience and training in police practices and the use of force generally, and the undisputed fact that an ECD is a device designed to obtain compliance through the application of physical force. [Dkt. 39]

- Excluding Plaintiffs' expert Harry Bonnell from testifying at trial that the use of the ECD was a specific cause of Salinas's death. [Dkt. 39]

- Permitting Plaintiffs' expert Harry Bonnell to testify only to the physiological mechanisms by which pain, physical stress, and psychological stress can contribute to death under certain circumstances unrelated to ECDs.[6] [Dkt. 39]

- Granting partial summary judgment in favor of the City Defendants on Plaintiffs' Monell claim, their claim for unlawful entry, and their contention that the police officers lacked a basis to attempt to detain and/or arrest Salinas. [Dkt. 62]

- The amount of any punitive damages to be assessed is bifurcated, to be tried only upon

---

[6] Plaintiffs' disagree with this statement.

the return of a verdict by the jury that Plaintiffs are entitled to such an award. [Dkt 64]

Respectfully submitted,

Dated:  May 17, 2013                     **RICHARD DOYLE, City Attorney**

By:  _/s/ Clifford Greenberg____
CLIFFORD GREENBERG
Sr. Deputy City Attorney

Attorneys for Defendants City of San Jose and Officers

Dated:  May 17, 2013                     **LIVINGSTON LAW FIRM**

By:  __/s/ Craig Livingston__
CRAIG A. LIVINGSTON

Attorneys for Defendant TASER International, Inc.

Dated:  May 17, 2013                     **LAW OFFICES OF DALE K. GALIPO**

By: _____
DALE K. GALIPO

Attorneys for Plaintiffs NOREEN SALINAS, CARLOS SALINAS, ANA OLIVA SALINAS and LORETTA SALINAS

JOINT PRETRIAL CONFERENCE STATEMENT                     Case No. C09-04410 EJD